IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

HJALMAR RODRIGUEZ, JR.,  :
          :
    Plaintiff,   :
          :
    V.     :
          :  NO. 7:24-cv-00025-WLS-TQL
Warden JACOB BEASLEY, *et al.*, :
          :
    Defendants. :
_____:

## ORDER & RECOMMENDATION

Plaintiff Hjalmar Rodriguez, Jr., a prisoner in Smith State Prison in Glennville, Georgia, filed a complaint under 42 U.S.C. § 1983. Compl., ECF No. 1. Thereafter, the undersigned recommended that the complaint be dismissed without prejudice under 28 U.S.C. § 1915(g) because Plaintiff had incurred at least three strikes and did not allege facts demonstrating that he was in imminent danger of serious physical injury. R. & R., ECF No. 4. Initially, the district judge adopted that recommendation and entered judgment against Plaintiff. Order, ECF No. 5; J., ECF No. 6.

Plaintiff, however, subsequently submitted a motion for an extension of time to file his objections, explaining that he had not received the recommendation of dismissal in a timely manner. Notice of Filing Mot. for Ext. of Time, ECF No. 7. Around the same time, Plaintiff filed a proposed amended complaint. Notice of Filing Proposed Am. Compl., ECF No. 8. The district judge vacated the order of dismissal and the judgment and granted Plaintiff additional time to file objections. Order, ECF No. 9. Plaintiff then submitted objections within the extended time. Obj., ECF No. 10.

Because the proposed amended complaint and objections included new factual allegations, the district judge construed these filings as a motion to amend the complaint and granted that motion. Order, ECF No. 11. Plaintiff had not signed the proposed amended complaint, however, so the district judge also ordered Plaintiff to sign and return the amended complaint. *Id.* Finally, the district judge referred this matter back to the undersigned for consideration of the signed amended complaint. *Id.* In doing so, the district judge noted that the undersigned should also address the arguments Plaintiff made in his objections regarding whether he had incurred three strikes under 28 U.S.C. § 1915(g). *Id.*

Instead of signing the previously filed amended complaint, Plaintiff has now filed a new amended complaint and a notice asking the Court to consider this new amended complaint in place of the one he previously filed. Am. Compl., ECF No. 12; Notice of Filing, ECF No. 14. This request is **GRANTED**. Thus, the most recent amended complaint (ECF No. 12) is now the operative complaint in this case, which is considered herein.

As set forth below, Plaintiff's arguments regarding his accrual of three strikes are not persuasive. Because Plaintiff has had at least three cases or appeals dismissed on grounds that constitute strikes, he is subject to the three-strikes rule. Nevertheless, in his amended complaint, Plaintiff has sufficiently alleged that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this case. Thus, the next step is for Plaintiff's amended complaint to undergo a preliminary review.

On that review, Plaintiff will be permitted to proceed for further factual development on his claims that (1) Dr. Raymond Moody and Warden Shawn Emmons were deliberately indifferent to Plaintiff's serious medical needs by failing to ensure that he received his medication; (2) CO1 Diana Searcy was deliberately indifferent to his serious medical needs by denying him medication on one occasion; (3) Officer Searcy retaliated against Plaintiff for threatening to file grievances against her; (4) Sergeant Tawann Newsom was deliberately indifferent to Plaintiff's serious medical needs by withholding his medication; (5) Defendant Newsom used excessive force against Plaintiff when he held Plaintiff on the yard without food, water, or medication, when he sprayed Plaintiff with a chemical spray, and when he refused to allow Plaintiff to decontaminate himself after being sprayed; (6) Defendant Newsom retaliated against Plaintiff for threatening to file grievances against Searcy; (7) Daniel Smith was deliberately indifferent to Plaintiff's serious medical needs when he refused to allow Plaintiff to have his medication; (8) Smith unconstitutionally failed to intervene with regard to Newsom's alleged use of excessive force against Plaintiff; (9) Defendant Beasley was deliberately indifferent to Plaintiff's serious medical needs when he refused to allow Plaintiff to get fitted for a prosthetic eye; (10) Defendant Beasley transferred Plaintiff in retaliation for refusing to drop a grievance; and (11) Defendant Beasley, in his official capacity, violated Plaintiff's rights under the Americans with Disabilities Act by denying Plaintiff placement in a transitional center.

Conversely, it is **RECOMMENDED** that Plaintiff's claims that (1) Warden Beasley was deliberately indifferent to Plaintiff's serious medical needs in relation to the

occasion when Plaintiff was held on the yard; (2) Warden Beasley violated Plaintiff's equal protection rights; (3) the Jane Doe Nurses were deliberately indifferent to Plaintiff's serious medical needs; (4) Defendants Walker and Warden Brian Adams denied Plaintiff due process; and (5) Plaintiff was denied his right of access to the courts be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.   It is also **RECOMMENDED** that any state law claims be **DISMISSED WITHOUT PREJUDICE** pursuant to Plaintiff's motion for voluntary dismissal.

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Plaintiff has moved for leave to proceed *in forma pauperis*. Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2. Federal law, however, prohibits a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).   This is known as the "three strikes provision."   Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is frivolous or malicious or fails to state a claim.   *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999).   If a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave may not be granted unless the prisoner alleges facts showing an "imminent danger of serious physical injury."   *Id.*

A review of court records on PACER shows that Plaintiff has filed at least three

cases or appeals that were dismissed on grounds that qualify as strikes.  *See, e.g.,* Order Dismissing Appeal, *Rodriguez v. Warden*, Appeal No. 15-13397 (11th Cir. Mar. 31, 2016), (three-judge panel dismissing appeal as frivolous); Order Dismissing Appeal, *Rodriguez v. Unnamed*, Appeal No. 17-13136 (11th Cir. Nov. 14, 2018), (three-judge panel dismissing appeal as frivolous); Order Dismissing Compl., *Rodriguez v. State of Georgia*, Case No. 4:15-cv-00226-HLM (N.D. Ga. Feb. 22, 2016), ECF No. 18 (dismissing for abuse of the judicial process); Order Dismissing Compl., *Rodriguez v. Unnamed*, Case No. 1:17-cv-00269-WSD (N.D. Ga. June 23, 2017), ECF No. 14 (dismissing for failure to state a claim).

In his objections, Plaintiff argues that he does not have three strikes.  First, Plaintiff contends that *Rodriguez v. Warden*, Appeal No. 15-13397, should not count as a strike because it was an interlocutory appeal and the underlying district court case went to a jury trial.  Obj. 3, ECF No. 10.  Thus, he asserts that the case could not have been frivolous. *Id.*  Regardless of what happened in the district court case, a three-judge panel of the Eleventh Circuit concluded that the appeal was frivolous and dismissed it on that basis. *See* Order*, Rodriguez v. Warden*, Appeal No. 15-13397 (11th Cir. Mary 31, 2016), ECF No. 15-1.  Therefore, this dismissal counts as a strike.

Plaintiff also asserts that *Rodriguez v. State of Georgia*, Case No. 4:15-cv-00226-HLM, should not count as a strike because the court in that case improperly found that he had abused the judicial process.  A review of the record in that case demonstrates that it was dismissed for abuse of the judicial process.  *See* Order Adopting R. & R., *Rodriguez v. State of Georgia*, Case No. 4:15-cv-00226-HLM (N.D. Ga. Feb. 22, 2016), ECF No. 18.

Plaintiff filed a motion for relief from the judgment, which was denied.    *Id.* at ECF Nos. 20 & 21.    Plaintiff did not file an appeal from the judgment, and this Court cannot review whether the basis for dismissal was improper.    Thus, this dismissal also counts as a strike.

Finally, Plaintiff argues that *Rodriguez v. Unnamed*, Case No. 1:17-cv-00269-WSD, and *Rodriguez v. Unnamed*, Appeal No. 17-13136, should not be counted as separate strikes because the latter is an appeal from the former.    Obj. 5, ECF No. 10.    Plaintiff's argument in this regard is mistaken, as both the underlying dismissal and the dismissal of the appeal count as strikes.    *See Daker v. Jackson*, 942 F.2d 1252, 1256 (11th Cir. 2019) (explaining that the dismissal of an appeal as frivolous constitutes a strike); *Howard v. Kraus*, 642 F. App'x 940, 943 (11th Cir. 2016) (agreeing that a dismissal of an appeal and of cases underlying the appeal each constituted strikes).    Because these two cases each constitute strikes and Plaintiff incurred the two strikes discussed above, Plaintiff has at least four strikes.    Therefore, he cannot proceed *in forma pauperis* in this action unless he can show that he qualifies for the "imminent danger" exception in § 1915(g).    *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999).

To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury" or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury."    *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted).    Complaints of past injuries are not sufficient.    *See Medberry*, 185 F.3d at 1193.    Vague and unsupported claims of possible dangers likewise do not suffice.    *See White v. State of Colo.*, 157 F.3d

1226, 1231-32 (10th Cir. 1998).  A court should only apply the exception to § 1915(g) in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is 'serious physical injury.'" *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

As set forth in more detail below, Plaintiff alleges in his complaint that his left eye was partially removed in May 2023 with the intention that he would be fitted with a prosthetic.  Since that time, however, Plaintiff has not been taken to be fit for a prosthetic, leaving his left eye socket partially empty.  Plaintiff asserts that, because of this situation, his face has begun to sink in, which will eventually lead to his face being permanently deformed if he does not receive a prosthetic.  Plaintiff also alleges that he experiences severe headaches and pain from not having the prosthetic, which will continue in the absence of treatment.  Having considered these allegations, the undersigned concludes that Plaintiff has sufficiently alleged that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis*.  Therefore, Plaintiff's motion to proceed *in forma pauperis* is now **GRANTED**.  Plaintiff is, however, still obligated to eventually pay the full balance of the filing fee, in installments, as set forth in § 1915(b) and explained below.  The district court's filing fee is not refundable, regardless of the outcome of the case, and must therefore be paid in full even if Plaintiff's complaint is dismissed prior to service.

For this reason, the **CLERK** is **DIRECTED** to forward a copy of this Order to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from

his account may commence as payment towards the filing fee, as explained below.

I.      Directions to Plaintiff's Custodian

Because Plaintiff has now been granted leave to proceed *in forma pauperis* in the above-captioned case, it is hereby **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the **CLERK** of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's trust account at said institution until the $350.00 filing fee has been paid in full.   The funds shall be collected and withheld by the prison account custodian who shall, on a monthly basis, forward the amount collected as payment towards the filing fee, provided the amount in the prisoner's account exceeds $10.00.   The custodian's collection of payments shall continue until the entire fee has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

II.      Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.   Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.   The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.   Plaintiff's complaint may be dismissed if he is

8

able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.   Standard of Review

Because he has been granted leave to proceed *in forma pauperis*, Plaintiff's complaint is now subject to a preliminary review.  *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings).  When performing this review, the court must accept all factual allegations in the complaint as true.  *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004).  *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

9

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.    Plaintiff's Allegations

In the amended complaint, Plaintiff asserts that he first began experiencing blurry vision in February 2021 after having bleach splashed in his left eye while on a work detail at Valdosta State Prison. Am. Compl. 4, ECF No. 12. At that time, Plaintiff submitted a medical request and was sent to a local optometrist at the Georgia Southern Eye Clinic. *Id.* The optometrist diagnosed Plaintiff with noninfectious uveitis and prescribed two

medications, which Plaintiff began using as instructed. *Id.* By March 17, 2021, the uveitis had improved. *Id.* Plaintiff was then taken off the medications in April 2021. *Id.*

In May 2021, however, Plaintiff's eye condition became worse again, so he submitted another medical request. *Id.* at 5. Between early May and May 25, 2021, Plaintiff submitted multiple medical requests, and his wife called the prison asking for him to be seen. *Id.* After Plaintiff's wife called, Plaintiff was seen in medical on June 10, 2021, by Defendant Nurse Practitioner ("NP") Seleska.[1] *Id.*

Plaintiff told NP Seleska that his vision in his left eye had become so blurry that he was unable to see anything out of that eye. *Id.* Plaintiff also reported that there was a sharp throbbing pain in his left eye. *Id.* Seleska refused to send Plaintiff to the outside optometrist, instead saying that she would refer Plaintiff to Augusta State Medical Prison ("ASMP"). *Id.* Plaintiff, however, was not seen promptly by any medical professional, and he began experiencing increased pain in his left eye. *Id.* Plaintiff's wife then began contacting the prison and the regional office about Plaintiff's condition. *Id.*

On June 30, 2021, Plaintiff was taken to a local optometrist where he was seen by Dr. Eric Kolisz, who found that Plaintiff had a detached retina in his left eye. *Id.* Dr. Kolisz referred Plaintiff to a specialist for surgery to reattach his retina. *Id.* On July 2, 2021, Seleska told Plaintiff that he would be referred to ASMP, rather than to the

---

[1]Plaintiff included NP Seleska as a defendant in this action, but the only claim that Plaintiff identified against her was a state law claim, and Plaintiff has moved to voluntarily dismiss his state law claims. *See* Am. Compl. 22-28, ECF No. 12. Thus, no specific claims against Nurse Seleska are set forth in the section below discussing Plaintiff's claims.

specialist, because surgery through the specialist was not cost efficient.    *Id.*

Plaintiff was first seen at ASMP on July 26, 2021, by Dr. Diego Espinosa.    *Id.* at 6.

Dr. Espinosa agreed that Plaintiff's retina was detached.    *Id.*    He also diagnosed Plaintiff

with panuveitis and a cataract in his left eye.    *Id.*    Dr. Espinosa prescribed three different

eye drops for Plaintiff to take, including prednisone.    *Id.*    Dr. Espinosa explained that the

prednisone in particular was critical because it would get the uveitis under control so that

he could perform surgery on Plaintiff's eye.    *Id.*    Dr. Espinosa gave Plaintiff one small

bottle of each of the drops.    *Id.*

Over the next few months, Plaintiff timely requested refills of the eye drops from

Defendant Dr. Raymond Moody and other staff members "to no avail."    *Id.*    Thereafter,

Plaintiff filed a grievance, and his wife contacted the regional office to complain about

delays in Plaintiff receiving his medications.    *Id.*    Even when Plaintiff did receive his

medication, he would only receive one bottle at a time, and he contends that he received

an average of one bottle per month.    *Id.* at 6-7.    Because the bottles are small, this was

not a sufficient amount for Plaintiff to continuously take his medication as prescribed, as

he would run out of the drops before he could get a refill.    *Id.* at 7.    Defendant Moody

"showed no regard" for Plaintiff's issues in getting a sufficient amount of his medications.

*Id.* at 6.    In September 2021, Dr. Espinosa found that Plaintiff's condition had not

improved due to Plaintiff not being able to take the medication as prescribed.    *Id.* at 7-8.

Plaintiff also repeatedly spoke to Defendant Warden Shawn Emmons about his need

for the eye drops, but Emmons generally ignored Plaintiff.    *Id.* at 7.    On October 28, 2021,

Warden Emmons responded to a grievance that Plaintiff had filed by refusing to consider Plaintiff's complaints, instead accepting Dr. Moody's answer to the grievance. *Id.* In late December 2021, Plaintiff spoke to Emmons during an inspection. *Id.* at 7. Plaintiff told Emmons that he was not getting enough of the eye drops to comply with the doctor's orders. *Id.* Warden Emmons called Plaintiff a liar until the dorm officer, who had escorted Plaintiff to several eye appointments, told Emmons that Plaintiff was telling the truth. *Id.*

In January 2022, Dr. Espinosa told Plaintiff that too much time had passed to perform the surgery, and thus, Plaintiff's vision in his left eye was permanently gone. *Id.* at 8. He therefore recommended that Plaintiff consider having his left eye removed and being fitted for a prosthetic. *Id.* Plaintiff requested a second opinion. *Id.* Thereafter, on March 1, 2022, he was scheduled for an outside eye appointment, but the prison staff refused to take him to the appointment. *Id.* Plaintiff filed a grievance, which was ultimately denied by Warden Jacob Beasley, who replaced Warden Emmons in April 2022. *Id.* at 8-9.

On April 5, 2022, Plaintiff saw Dr. John Sullivan at Southern Retinal Specialists. *Id.* at 8. Dr. Sullivan agreed with Dr. Espinosa that it was too late to save Plaintiff's left eye. *Id.* Dr. Sullivan prescribed several medications, and Plaintiff began wearing an eye patch over his left eye. *Id.*

On May 5, 2022, Plaintiff's wife and son were visiting Plaintiff at the prison. *Id.* at 9. Defendant CO1 Diana Searcy was the visitation officer that day. *Id.* At some

13

point, Searcy began harassing Plaintiff and his visitors about Plaintiff wearing an eye patch and having prescription sunglasses.  *Id.*  At the end of the visit, Plaintiff's wife told Searcy that she would be contacting the ombudsmen unit and filing a complaint against Searcy.  *Id.*  Plaintiff next saw Searcy on June 22, 2022, when Searcy was the officer assigned to Plaintiff's dorm.  *Id.*  Searcy again harassed Plaintiff, and Plaintiff threatened to file a grievance or lawsuit against Searcy.  *Id.*

Plaintiff next alleges that Defendant Searcy conspired with her boyfriend, Defendant Sergeant Tawann Newsom, to put Plaintiff in the yard to be "smoked."  *Id.* Plaintiff asserts that this is an unofficial action in which the prisoner is taken outside during the summer months and left for hours without food, water, or restroom breaks.  *Id.* at 10. In addition, when it happened to him, Plaintiff was not allowed to take his medication to the yard.  *Id.*  Plaintiff told Searcy that he needed his medication, but she said that she did not care.  *Id.*  Newsom also refused to allow Plaintiff to bring his medication.  *Id.*

Plaintiff stayed outside the entire day, during which he repeatedly informed Defendant Daniel Smith about his eye condition and need for medication.  *Id.*  Without the medicine, Plaintiff's left eye began to burn very badly.  *Id.* at 10-11.  Plaintiff also told Smith that he had not had anything to eat that morning and that he needed some water, but Smith ignored everything that Plaintiff said.  *Id.* at 11.

Throughout the day, Newsom brought additional inmates to the yard.  *Id.*  Plaintiff was experiencing pain in his eye, so he pleaded with Newsom to give him his eye drops, but Newsom refused.  *Id.*  Because of his eye, Plaintiff had a severe headache.  *Id.*  He

14

was also dehydrated.  *Id.*  Plaintiff asked to speak to a supervisor, but Newsom ignored his requests instead telling Plaintiff that he had "something" for Plaintiff.  *Id.*  At this point, Plaintiff was beginning to worry because he had heard of inmates being subjected to excessive force and even being killed.  *Id.*

Next, Newsom and members of the CERT team came out to the yard where Plaintiff was being held.  *Id.* at 11-12.  They removed the other prisoners so that Plaintiff was the only inmate on the yard.  *Id.* at 12.  In fear for his life, Plaintiff demanded to have a supervisor present.  *Id.*  Newsom and the CERT officers, who were all wearing gas masks, sprayed Plaintiff with a chemical bear repellant without any justification.  *Id.* Moreover, Newsom sprayed Plaintiff directly in the face even though he knew about Plaintiff's eye condition.  *Id.*  Newsom recorded this event with a video camera.  *Id.*

Thereafter, Newsom refused to allow Plaintiff to decontaminate according to Georgia Department of Corrections policy.  *Id.*  He also continued to refuse Plaintiff his medications.  *Id.*  Defendants Jane Doe Nurses were called but also refused to decontaminate Plaintiff or provide him with his medications.  *Id.* at 13.  Newsom then put Plaintiff into a segregation cell on strip cell status without running water other than the water in the toilet.  *Id.*  Defendant Smith witnessed all of this without intervening or helping Plaintiff in any way, including allowing him to decontaminate or to have his prescribed medications.  *Id.*  Following this incident, Plaintiff's skin on his face and upper body peeled as though he had been sun burned.  *Id.*

Defendant Searcy was aware of what happened on the yard and came to Plaintiff's

15

cell to taunt him about being sprayed and put on strip cell.  *Id.*  She also again denied Plaintiff's request for his eye drops.  *Id.*  Thereafter, Searcy and Newsom prepared a fabricated disciplinary report asserting that Plaintiff was guilty of failing to follow instructions to attempt to justify Newsom's use of force against Plaintiff.  *Id.*  Searcy wrote the report, but Newsom signed it.  *Id.* at 14.  Plaintiff asserts that all of these actions were done in retaliation for Plaintiff and his wife threatening to file grievances against Searcy.  *Id.*

On June 27 and 28, 2022, Plaintiff spoke to Warden Beasley during inspection, telling Beasley about Newsom putting him in the yard and using pepper spray on him without cause.  *Id.*  Plaintiff also told Beasley about being denied his medication.  *Id.*  Plaintiff asserts that Beasley was not concerned about Plaintiff's issues and told Plaintiff to drop his grievance.  *Id.*  Plaintiff refused, and Beasley responded that he knew how to deal with people like Plaintiff.  *Id.*  On June 29, 2022, Beasley had Plaintiff sent to intake with all his property, telling Plaintiff that he was getting Plaintiff out of there because of Plaintiff filing grievances and having his wife make phone calls on his behalf.  *Id.*

Plaintiff was transferred to Smith State Prison on June 29, 2022.  *Id.* at 15.  At this point, Plaintiff's "uveitis had started spilling over to his right eye," such that his vision in that eye was blurry and he was nearly blind.  *Id.*  At Smith State Prison, Plaintiff was examined by NP Marla Riley, who found that Plaintiff had lost some of the vision in his right eye.  *Id.*  Riley put in for Plaintiff to have an emergency consultation within two weeks, but Plaintiff was not actually seen until August.  *Id.*

16

On July 6, 2022, Defendant Unit Manager Walker conducted a disciplinary hearing related to the disciplinary report filed by Searcy and Newsom, but Walker did not conduct any investigation, allow Plaintiff to call witnesses, or allow Plaintiff to have an advocate present. *Id.* at 16. Instead, Walker found Plaintiff guilty. *Id.* Plaintiff protested the lack of due process, and Walker told him he could file an appeal. *Id.* Plaintiff later gave his appeal to Defendant Warden Brian Adams, who continuously refused to respond to Plaintiff's appeal even though Plaintiff repeatedly asked Adams to make a ruling on the appeal or give it back to Plaintiff so that he could exhaust his administrative remedies. *Id.*

Plaintiff's medical chart was sent to Smith State Prison in late July, and Plaintiff again saw NP Riley on July 28, 2022. *Id.* The chart said that Plaintiff had received a refill of his medications on June 28, 2022, but Plaintiff explained that he had not had a refill in months. *Id.* Riley noted that Plaintiff's signature was different on the June 28, 2022, medication refill form than it was on other receipts. *Id.* at 16-17. Riley also found that Plaintiff had suffered a chemical burn on his left eye when he was sprayed and not allowed to be decontaminated. *Id.* at 17. Riley diagnosed Plaintiff with an eye infection and prescribed new medications. *Id.*

After "rigorous treatment" with prednisone, Plaintiff's right eye healed and his vision improved, although it was not as good as it had previously been. *Id.* On May 5, 2023, after attorneys at the Southern Center for Human Rights sent numerous letters to

Warden Beasley[2] and Department of Corrections medical director Sharon Lewis, Plaintiff underwent surgery to have his left eye partially removed. *Id.* Before the surgery, Plaintiff's doctor assured Plaintiff that he was a good candidate for a partial prosthetic, which would allow his left eye to move with his right eye and prevent Plaintiff's face from sinking in. *Id.* at 17-18.

Following the surgery, however, Plaintiff has not been seen about his eye or taken to start the process of having a prosthetic made. *Id.* at 18. Plaintiff has tried to get Warden Beasley to send Plaintiff to an outside specialist for a prosthetic, but Beasley has refused to do so. *Id.* As a result, Plaintiff's face has begun to sink in, and he has headaches and pain. *Id.* Moreover, Plaintiff asserts that the lack of a prosthetic will cause permanent deformation, chronic pain, and severe headaches. *Id.* Plaintiff will also eventually have to undergo another surgery to completely remove the left eye and be fitted with a full prosthetic that does not move if he does not receive a partial prosthetic. *Id.*

Plaintiff next alleges that he is currently eligible to be moved to a transitional center, which is a program that allows offenders to be slowly reintroduced into society and to work to earn money for their release. *Id.* at 19. Plaintiff was supposed to be referred to the transitional center on May 19, 2024, in anticipation of his parole eligibility on August 19, 2025, but he has been informed by his counselor and Warden Beasley that his loss of eyesight may prevent him from going to the transitional center, resulting in him being held

---

[2]Although Plaintiff does not explain this, it appears that, at some point, Warden Beasley was transferred to Smith State Prison to replace Warden Brian Adams.

in prison longer than necessary.   *Id.*

Plaintiff asserts that Smith State Prison is understaffed, making it dangerous.   *Id.* At any time, there may only be one officer for every seventy-five to one hundred inmates, and there are even fewer officers on weekends and holidays.   *Id.* at 19-20.   According to Plaintiff, in 2023, there were over twenty murders in the prison, including the killing of an officer.   *Id.* at 20.   Thus, Plaintiff contends that he is held in one of the worst prisons in the country.   *Id.*   Beasley is aware of numerous weapons in the prison but fails to take any action to stop them.   *Id.*   Beasley has also encouraged certain inmates to exercise power over other inmates, such as by telling gang leaders to control their members rather than using the disciplinary process to punish inmates or to encourage them to follow the rules.   *Id.*   Beasley and prison staff members will also discipline whole units in the hopes that inmates will punish the individual responsible for the unit being disciplined.   *Id.* at 20-21.

Plaintiff is a Muslim, and he attempted to file a grievance regarding not receiving a particular religious service.   *Id.* at 21.   Beasley sent an inmate who is a religious leader to try to make Plaintiff give up his grievance.   *Id.*   Plaintiff has also tried to get accommodations pursuant to the Americans with Disabilities Act ("ADA"), but he has been unable to determine the identity of the ADA coordinator.   *Id.*   Plaintiff has also been denied access to the law library or a legally trained individual.   *Id.*

III.    Plaintiff's Claims

    A.    Moody and Emmons

In his first claim, Plaintiff asserts that Defendants Dr. Raymond Moody and Warden Shawn Emmons were deliberately indifferent to his serious medical needs by failing to provide him with his medications, such that he ultimately lost his left eye.   Am. Compl. 22, ECF No. 12.   In order to state a claim for deliberate indifference to a serious medical need, a prisoner must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need.   *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."   *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted).   Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended.   *Farrow*, 40 F.3d at 1243.

An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety."   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   Notably, to establish deliberate indifference, the prisoner must allege facts to show that the defendant "was actually aware that his own conduct caused a risk of serious harm to the plaintiff."   *Wade v. McDade*, 2024 WL 3354963, at *7 (11th Cir. July 10, 2024).

Here, Plaintiff asserts that he had serious medical needs insofar as he says that he

had a detached retina, which required surgery, and that he had uveitis, which had to be treated before the surgery could be completed.   Plaintiff contends that he personally spoke to both Dr. Moody and Warden Emmons about his conditions and the need for consistent use of his medications.   He also told them that he was not receiving sufficient medication to allow him to take the eye drops as they were prescribed.   According to Plaintiff, both Dr. Moody and Warden Emmons generally ignored his requests for a sufficient amount of his medication.

Accepting these allegations as true and construing them in Plaintiff's favor, it appears possible that Dr. Moody and Warden Emmons may have been deliberately indifferent to Plaintiff's serious medical needs.   Therefore, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to a serious medical need claim against Defendants Dr. Raymond Moody and Warden Shawn Emmons based on their failure to ensure that he had sufficient medication to treat his eye conditions.

### B.    Searcy

Plaintiff next contends that Defendant CO1 Diana Searcy was deliberately indifferent to his serious medical needs by depriving him of medication and by conspiring with Defendant Sergeant Tawann Newsom to file a false disciplinary report against Plaintiff and to have Plaintiff held on the yard without food, water, or restroom breaks. Am. Compl. 23, ECF No. 12.   Plaintiff goes on to say that Searcy's actions constituted retaliation for Plaintiff and his family filing grievances and making complaints.   *Id.*

21

1.  Deliberate Indifference

Plaintiff's first claim as to Searcy is that she was deliberately indifferent to his serious medical needs.   As noted above, a prisoner attempting to state a claim for deliberate indifference to a serious medical need must allege facts to show that he had a medical need that was objectively serious and that the defendant was deliberately indifferent to that need.   *Farrow*, 320 F.3d at 1243.

Here, Plaintiff's allegations show a serious medical need insofar as he had an eye condition that required medication.   Moreover, with regard to Defendant Searcy, Plaintiff alleges that, on the day he was held in the yard, he told Searcy at the beginning and end of the day that he needed medication and she declined to assist him even though she knew about his eye problems.   At this stage of the proceeding, these allegations are sufficient to allow Plaintiff to proceed on his deliberate indifference claim against Searcy for refusing Plaintiff his eye medications.

2.  Retaliation

Plaintiff also asserts that Searcy retaliated against Plaintiff by having her boyfriend Sergeant Newsom punish Plaintiff and by helping Newsom file a false disciplinary report against Plaintiff.   "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."   *Farrow*, 320 F.3d at 1248.   Thus, a prisoner litigant may state a claim for retaliation by alleging facts showing that (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action likely to "deter a person of ordinary firmness from engaging in such speech," and (3) there was a

causal relationship between the speech and the retaliatory action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Plaintiff alleges that both he and his wife threatened to file grievances or other complaints against Searcy. Moreover, he alleges that Searcy took adverse action, including having Plaintiff punished, in direct response to Plaintiff's stated intention to file grievances. Based on these allegations, Plaintiff will be permitted to proceed on his retaliation claim against Searcy.

C.    Newsom

As to Defendant Sergeant Tawann Newsom, Plaintiff asserts that Newsom conspired with Defendant Searcy to intentionally deprive Plaintiff of his medications and to leave Plaintiff on the yard without food, water, or restroom breaks. Am. Compl. 23, ECF No. 12. Plaintiff also asserts that Newsom retaliated against Plaintiff and used excessive force when he sprayed Plaintiff with chemicals and refused to allow Plaintiff to decontaminate himself. *Id.* Plaintiff further contends that Newsom retaliated against Plaintiff by falsifying a disciplinary report and housing Plaintiff in administrative segregation. *Id.*

1.    Deliberate Indifference to Serious Medical Need

As with the other defendants discussed so far, Plaintiff's allegations potentially implicate a deliberate indifference claim against Newsom. In this regard, Plaintiff again has asserted a serious medical need with regard to his eye problems. Plaintiff also alleges that, on the day that he was held in the yard, he repeatedly asked Newsom for his eye

23

medications.    Moreover, Plaintiff contends that, as the day continued, his eye was burning and he was developing a headache.

Construing Plaintiff's allegations in his favor, it appears reasonable to infer that Newsom was aware that Plaintiff was suffering these consequences of not having his medication but continued to refuse to allow Plaintiff to have his eye drops.    Thus, Plaintiff will be permitted to proceed for further factual development on his deliberate indifference to a serious medical need claim against Newsom.

### 2. Excessive Force

Plaintiff's allegations against Newsom also implicate a potential claim for excessive force.    The Eighth Amendment clearly prohibits the unnecessary and wanton infliction of pain, the infliction of pain without penological justification, and the infliction of pain grossly disproportionate to the severity of the offense.    *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).    To state an Eighth Amendment claim in this context, a plaintiff must allege conduct by a defendant that was objectively harmful enough to establish a constitutional violation and that the defendant acted with a sufficiently culpable state of mind, *i.e.*, that the defendant acted maliciously and sadistically to cause harm.    *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

On this point, Plaintiff asserts that Newsom had Plaintiff held in the yard all day in the summer without food, water, or medicine.    He also contends that Newsom sprayed Plaintiff with chemicals directly in the face while knowing the Plaintiff had a painful eye condition.    Moreover, Plaintiff asserts that Newsom took these actions without

24

justification because he was retaliating against Plaintiff for threatening to file a grievance or other complaints against Newsom's girlfriend, which suggests that Newsom took these actions maliciously.  These allegations are sufficient to allow Plaintiff to proceed on an excessive force claim against Newsom.

### 3. Retaliation

Plaintiff's assertions against Newsom may also raise a retaliation claim.  And as with Searcy, Plaintiff asserts that Newsom took adverse actions against him, including keeping him on the yard all day and filing a false disciplinary report, in direct response to Plaintiff threatening to file complaints against Searcy.  Thus, Plaintiff will also be permitted to proceed on his retaliation claim against Newsom.

### D.    Smith

Next, Plaintiff alleges that Defendant Smith also deprived Plaintiff of food, water, and restroom breaks and allowed Plaintiff to be put into his cell without water and without being decontaminated.  Am. Compl. 24, ECF No. 12.  Plaintiff also contends that Smith denied Plaintiff his prescribed medication.  *Id.*

### 1. Deliberate Indifference to Serious Medical Need

The allegations relating to denying Plaintiff medication suggest a deliberate indifference claim against Smith.  In this regard, Plaintiff has again asserted a serious medical need with regard to his eye problems.  Plaintiff's allegations in this regard are similar to those relating to Newsom.  In particular, Plaintiff also alleges that, on the day that he was held in the yard, he repeatedly asked Smith for his eye medications and that, as

the day continued, Plaintiff's eye was burning and he was developing a headache.

Construing Plaintiff's allegations in his favor, it appears reasonable to believe that Smith was aware that Plaintiff was suffering these consequences of not having his medication but continued to refuse to allow Plaintiff to have his eye drops.   Thus, Plaintiff will be allowed to proceed for further factual development on his deliberate indifference to a serious medical need claim against Smith.

### 2.  Excessive Force

Plaintiff's allegations against Smith also may raise a claim for excessive force.   As noted above, a defendant uses excessive force when he or she engages in conduct that was objectively harmful enough to establish a constitutional violation and that the defendant acted with a sufficiently culpable state of mind, *i.e.*, that the defendant acted maliciously and sadistically to cause harm.   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Additionally, an officer who is present and in a position to intervene to prevent another officer's use of excessive force may be held liable for the failure to take reasonable steps to protect a victim of excessive force.   *See Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008).

In this regard, Plaintiff asserts that Smith was the officer watching over Plaintiff while he was held in the yard all day in the summer without food, water, or medicine.   He also contends that Smith watched as Plaintiff was sprayed with chemicals and refused to allow Plaintiff to be decontaminated after Plaintiff was sprayed.   These allegations are sufficient to allow Plaintiff to proceed on his claim that Smith unconstitutionally failed to

26

intervene in Newsom's use of excessive force.

### E.    Beasley

Plaintiff asserts that Defendant Warden Jacob Beasley was deliberately indifferent to his serious medical needs by denying him medication.   Am. Compl. 25, ECF No. 12. Plaintiff goes on to say that Beasley allowed Plaintiff to be put back into a cell without being decontaminated.   *Id.*   Moreover, Plaintiff alleges that Beasley transferred Plaintiff from Valdosta in retaliation for Plaintiff filing a grievance against Searcy and for Plaintiff's wife speaking to officials of higher rank than Beasley about Plaintiff's treatment.   *Id.*

Plaintiff further asserts that Beasley conspired with medical personnel to refuse to provide Plaintiff with a prosthetic eye and that Beasley refused to send Plaintiff to a transitional center.   *Id.*   Plaintiff contends that requiring him to stay in a level five prison even though he is eligible for a transitional center violates his equal protection rights because "all other similarly situated offenders" are put in a transitional center and receive prosthetics when needed.

### 1.    Deliberate Indifference

#### a.    Yard Incident

With regard to this potential deliberate indifference claim, Plaintiff asserts that he spoke to Warden Beasley after the incident when Newsom held him on the yard all day and would not allow Plaintiff to be decontaminated afterward.   On this point, Plaintiff only alleges that Beasley knew about the events on the yard after the fact.   He does not allege that Beasley knew that there was any particular risk of harm before it happened or as it was

27

happening.   Thus, to the extent that he is attempting to state a deliberate indifference claim against Beasley related to Plaintiff being held on the yard without food, water, or medicine, or for not allowing Plaintiff to be decontaminated, it is **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### b. Prosthetic

Plaintiff also contends that Beasley was deliberately indifferent insofar as he has prevented Plaintiff from being fitted for a prosthetic to replace the part of his left eye that is missing.   In this regard, Plaintiff asserts that he has personally spoken to Beasley, such that it is reasonable to construe Plaintiff's allegations as stating that Beasley is aware that Plaintiff is suffering from headaches and faces additional potential consequences as a result of the missing eye.   Therefore, Plaintiff's claim against Beasley for preventing Plaintiff from receiving a prosthetic eye may proceed for further factual development.

### 2. Retaliation

Plaintiff also contends that Beasley retaliated against Plaintiff by sending him from Valdosta State Prison to Smith State Prison.   As to the first element of a retaliation claim, Plaintiff asserts that he engaged in protected speech by filing a grievance.   Although it is not entirely clear from Plaintiff's allegations that this transfer would constitute an adverse action, it appears possible that it could be considered as such.   Moreover, Plaintiff asserts that Beasley transferred Plaintiff immediately after Plaintiff refused to drop the grievance. During that conversation, Plaintiff asserts that Beasley stated that he knew how to deal with people like Plaintiff, suggesting that the transfer was made in response to Plaintiff not

28

dropping the grievance.  Thus, Plaintiff will be permitted to proceed for further factual development on a retaliation claim against Beasley.

### 3. Equal Protection

Plaintiff next asserts that Beasley has violated his equal protection rights by failing to transfer Plaintiff to a transitional center.   The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   A plaintiff bringing an equal protection claim must prove either that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), or that he "was treated differently than similarly situated persons [and] the defendant unequally applied [a] facially neutral statute for the purpose of discriminating against [him]."   *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).

Here, Plaintiff baldly asserts that other similarly situated individuals are treated differently than he has been treated, but he has not set forth any supporting factual allegations for this contention.   A bare allegation of the elements of the claim without supporting factual allegations is insufficient to state a claim for relief.   Therefore, it is **RECOMMENDED** that Plaintiff's equal protection claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

### F.    Jane Doe Nurses

Plaintiff next asserts that the Jane Doe Nurses were deliberately indifferent to his

serious medical needs by failing to provide meaningful medical care and refusing to decontaminate Plaintiff's eye after Plaintiff was sprayed with chemicals.    Am. Compl. 26, ECF No. 12.    Plaintiff contends that these nurses failed to provide him with any medical care at all between June 22, 2022, and June 29, 2022.    *Id.*

Fictitious party pleading, *i.e.*, bringing claims against John Doe defendants, is generally only permitted in federal court when the plaintiff's description of the defendant is so specific that the party may be identified for service even though his or her actual name is unknown.    *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).    Here, Plaintiff does not provide any identifying information about these potential defendants other than to say that they are nurses.    This is not sufficient to allow this claim to proceed.

Moreover, Plaintiff does not assert any specific facts relating to any particular nurse. Instead, he makes only broad and general statements that the nurses failed to provide him with treatment.    Because Plaintiff's allegations do not state a claim for relief, it is **RECOMMENDED** that Plaintiff's claims against the Jane Doe Nurses be **DISMISSED WITHOUT PREJUDICE**.

### G.    Adams and Walker

Plaintiff alleges that Defendant Walker refused to provide Plaintiff with "pre-notice" of a disciplinary hearing and denied him the chance to present evidence or call witnesses.    Am. Compl. 26, ECF No. 26.    He further asserts that Warden Brian Adams would not respond to his appeal, which he argues denied him due process.    *Id.* at 26-27.

To state a claim for denial of due process, a plaintiff must allege that he was

deprived of life, liberty, or property without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (recognizing that prisoners "may not be deprived of life, liberty, or property without due process of law").  Here, Plaintiff does not allege any facts regarding what happened as a result of being found guilty at this disciplinary hearing.  It seems that the disciplinary report was generated to support Plaintiff being put on the yard, which occurred before the disciplinary hearing.  Plaintiff does not allege facts that show that he was deprived of any liberty interest as a result of the hearing, and thus, he has not stated a due process claim against Adams or Walker.  Accordingly, it is **RECOMMENDED** that Plaintiff's due process claim against Adams and Walker be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

###### H.    Americans With Disabilities Act

Next, Plaintiff contends that Defendant Beasley and his staff violated the Americans with Disabilities Act by refusing to house Plaintiff with individuals who have a similar disability to Plaintiff.   Am. Compl. 27, ECF No. 12.   Instead, Plaintiff asserts that Beasley has continued to house Plaintiff at Smith State Prison, where Plaintiff has been assaulted. *Id.*  Plaintiff alleges that Smith State Prison is severely understaffed, so no officer was present to witness these assaults.  *Id.*  Plaintiff asserts that Beasley disregarded Plaintiff's visual impairment and the need to keep Plaintiff safe.  *Id.*

Additionally, Plaintiff contends that Beasley is aware of Plaintiff having a contentious history with members of the Gangster Disciples gang.  *Id.*  Plaintiff goes on to say that Beasley has refused to take action to prevent the possession of weapons, noting

that an offender used a handgun to murder a kitchen staff member and commit suicide.    *Id.*
at 28.    Plaintiff asserts that the lack of staffing has allowed offenders to act violently within
the prison.    *Id.*    Plaintiff also alleges that Beasley uses offenders to enact violence against
other offenders within the prison.    *Id.*

Title II of the ADA prohibits discrimination in services, programs, or activities of a
"public entity" or "discrimination by any such entity." *See* 42 U.S.C. § 12132; *Edison v.
Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010); 42 U.S.C. § 12131.

> To state a claim under the ADA or RA, a plaintiff generally must prove (1)
> that he is a qualified individual with a disability; (2) that he was either
> excluded from participation in or denied the benefits of a public entity's
> services, programs, or activities, or was otherwise discriminated against by
> the public entity; and (3) that the exclusion, denial of benefit, or
> discrimination was by reason of the plaintiff's disability.

*Hatcher v. Thomas*, No. 2:14-CV-67-WHA, 2017 WL 712634, at *4–5 (M.D. Ala. Feb. 1,
2017), recommendation adopted, No. 2:14-CV-67, 2017 WL 710056 (Feb. 22, 2017).

In this case, Plaintiff has named Warden Beasley, but he did not name either the
Georgia Department of Corrections or the prison as a party.    Individuals employed by a
correctional facility cannot be sued under the ADA.    *Shotz v. City of Plantation, Fla.*, 344
F.3d 1161, 1172 (11th Cir. 2003).    Thus, the undersigned will, for the purpose of this
review, liberally construe the complaint as bringing claims against Warden Beasley in both
in his individual and official capacity.    Claims against employees in their "official
capacities" are, in essence, against a "public entity," the Georgia Department of
Corrections.    *See e.g., Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010).

Here, Plaintiff alleges that he has a disability insofar as he has an impairment to his vision due to the loss of his left eye. Additionally, he asserts that he is eligible for placement in a transitional center, but he has been denied this placement on account of his vision loss. Based on these allegations, Plaintiff will be allowed to proceed for further factual development on his ADA claim against Warden Beasley in his official capacity.

I.    Access to Courts

In the complaint, Plaintiff briefly states that he has been denied access to the law library or a person who knows the law. To the extent that this may be construed as attempting to state a claim for denial of the right of access to the courts, such a claim requires the plaintiff to allege facts showing that he was denied access to the courts and that the denial of access resulted in an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). Moreover, the injury must relate to prospective or existing litigation, such as "being prevented from presenting claims" while "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 162 F.3d 1284, 1290 & n.10 (11th Cir. 1998).

Here, Plaintiff does not include any factual allegations to show that he suffered an actual injury in this regard. Thus, it is **RECOMMENDED** that any claim that he was denied his right of access to the courts be **DISMISSED WITHOUT PREJUDICE**.

J.    State Law Claims

Plaintiff included a number of state law claims in his complaint, but he has filed a motion asserting that these claims are being raised in a pending state court action. Notice

of Voluntary Dismissal, ECF No. 13.    Thus, he states that he wants to dismiss those claims

from this action.    Therefore, it is **RECOMMENDED** that Plaintiff's state law claims be

**DISMISSED WITHOUT PREJUDICE** pursuant to Plaintiff's voluntary dismissal of

those claims.

IV.    <u>Conclusion</u>

Therefore, as set forth above, Plaintiff will be permitted to proceed for further

factual development on his claims that (1) Dr. Raymond Moody and Warden Shawn

Emmons were deliberately indifferent to Plaintiff's serious medical needs by failing to

ensure that he received his medication; (2) CO1 Diana Searcy was deliberately indifferent

to his serious medical needs by denying him medication on one occasion; (3) Officer

Searcy retaliated against Plaintiff for threatening to file grievances against her; (4) Sergeant

Tawann Newsom was deliberately indifferent to Plaintiff's serious medical needs by

withholding his medication; (5) Defendant Newsom used excessive force against Plaintiff

when he held Plaintiff on the yard without food, water, or medication, when he sprayed

Plaintiff with a chemical spray, and when he refused to allow Plaintiff to decontaminate

himself after being sprayed; (6) Defendant Newsom retaliated against Plaintiff for

threatening to file grievances against Searcy; (7) Daniel Smith was deliberately indifferent

to Plaintiff's serious medical needs when he refused to allow Plaintiff to have his

medication; (8) Smith unconstitutionally failed to intervene with regard to Newsom's

alleged use of excessive force against Plaintiff; (9) Defendant Beasley was deliberately

indifferent to Plaintiff's serious medical needs when he refused to allow Plaintiff to get

fitted for a prosthetic eye; (10) Defendant Beasley transferred Plaintiff in retaliation for refusing to drop a grievance; and (11) Defendant Beasley, in his official capacity, violated Plaintiff's rights under the Americans with Disabilities Act by denying Plaintiff placement in a transitional center.

Conversely, it is **RECOMMENDED** that Plaintiff's claims that (1) Warden Beasley was deliberately indifferent to Plaintiff's serious medical needs in relation to the occasion when Plaintiff was held on the yard; (2) Warden Beasley violated Plaintiff's equal protection rights; (3) the Jane Doe Nurses were deliberately indifferent to Plaintiff's serious medical needs; (4) Defendants Walker and Warden Brian Adams denied Plaintiff due process; and (5) Plaintiff was denied his right of access to the courts be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.   It is also **RECOMMENDED** that any state law claims be **DISMISSED WITHOUT PREJUDICE** pursuant to Plaintiff's motion for voluntary dismissal.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

For those reasons discussed above, it is hereby **ORDERED** that service be made on **DEFENDANTS DR. RAYMOND MOODY, WARDEN SHAWN EMMONS, CO1 DIANA SEARCY, SERGEANT TAWANN NEWSOM, DANIEL SMITH, and WARDEN JACOB BEASLEY**, and that they file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.   Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his

lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

**REQUESTS FOR DISMISSAL AND/OR JUDGMENT**

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 18th day of September, 2024.

s/ ***Thomas Q. Langstaff***
United States Magistrate Judge

39