**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

|  |  |  |
|---|---|---|
| **HJALMAR RODRIGUEZ, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CASE NO:** |
| v. | : | **7:24-cv-25–WLS-AGH** |
| | : | |
| | : | |
| **Warden JACOB BEASLEY,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**ORDER**

Before the Court is the Order and Recommendation (Doc. 69) ("Recommendation") of United States Magistrate Judge Amelia G. Helmick filed December 1, 2025. Therein, Judge Helmick provides her recommendations after performing the preliminary screening of Plaintiff's Second Amended Complaint (Doc. 40) ("SAC") as well as her recommendations with respect to the Motion to Dismiss (Doc. 58) filed by Defendants Dr. Raymond Moody ("Dr. Moody"), Nurse Practitioner Seleska ("NP Seleska") and the Jane Doe Nurses ("Doe Nurses").

Judge Helmick's Recommendation and 28 U.S.C. § 636(b)(1) provided the parties with fourteen days after service of the Recommendation within which to file objections. (Doc. 69 at 24). Plaintiff's Objection in Opposition to the Magistrate's Report & Recommendation (Doc. 73) ("Objection") was timely filed as of January 4, 2026.[1] Buried in Plaintiff's Objection is a motion for leave to file a third amended complaint. After thorough review of the Recommendation and for the reasons stated below, Plaintiff's Objection is **OVERRULED**,

---

[1] Plaintiff was granted an extension through and including January 5, 2025, to file objections, if any, to the Recommendation. (*See* Docket text entry dated December 22, 2025). Although the Court received Plaintiff's response on January 20, 2026, he signed it on January 4, 2026. (Doc. 73 at 10). "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *United States v. Glover*, 686 F.3d 1203, 1205 (11th Cir. 2012) (internal quotation marks omitted), *abrogated on other grounds by Amendment 780 as stated in United States v. Guyton*, No. 22-10984, 2023 WL 2604640, at *1 (11th Cir. Mar. 22, 2023) (per curiam). "Unless there is evidence to the contrary, like prison logs or other records, we assume that a prisoner's motion was delivered to prison authorities on the day he signed it." *Glover*, 686 F.3d at 1205.

1

any motion for leave to file a third amended complaint is **DENIED**, and Judge Helmick's Recommendation is **ACCEPTED and ADOPTED**.

## I.  BACKGROUND

At the time he filed his original complaint, Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP motion"). Plaintiff had previously incurred three strikes under the Prison Litigation Reform Act ("PLRA") 28 U.S.C. § 1915(g). Thus, the initial Recommendation (Doc. 4) of United States Magistrate Judge Thomas Q. Langstaff found Plaintiff ineligible to proceed *in forma pauperis* because he had not alleged he was under imminent danger of serious physical injury in his original complaint. The Court adopted Judge Langstaff's Recommendation, denied the *in forma pauperis* motion, and dismissed Plaintiff's original complaint. (*See* Docs. 4, 5). Subsequently, Plaintiff moved for an extension of time to object to Judge Langstaff's Recommendation (Doc. 4) because Plaintiff had not timely received such Recommendation. The Court vacated the order of dismissal and the judgment and granted Plaintiff additional time to file objections. (Doc. 9).

Plaintiff filed a timely objection to Judge Langstaff's Recommendation and also filed a proposed first amended complaint (Doc. 12). As those documents included new factual allegations, this Court referred the matter back to the United States Magistrate Judge for a preliminary review of the amended complaint, taking into account the arguments set forth in Plaintiff's objections regarding dismissal under the three-strikes provision. (Doc. 11). Based solely on Plaintiff's allegations regarding the damage to his left eye as noted below, Judge Langstaff found that Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury and granted Plaintiff's IFP motion. (Doc. 15 at 7).

Plaintiff's allegations from his first amended complaint (Doc. 12) are set out in detail in the Order & Recommendation (Doc. 15) of United States Magistrate Judge Thomas Q. Langstaff which was docketed on September 18, 2024, and which was accepted and adopted by the Court by Order (Doc. 62) entered August 26, 2025. Briefly, for purposes of this Order, Plaintiff alleged he began experiencing blurry vision in February 2021, after bleach was splashed in his left eye while on a work detail at Valdosta State Prison ("VSP").[2] Plaintiff

---

[2] Plaintiff did not allege that anyone purposefully splashed bleach into his eye, and the incident appears to have been an accident.

alleged that due to Defendants' actions and inactions after the bleach was splashed into his eye, he eventually lost his left eye, suffered damage to his right eye, and further that because of the loss of his left eye and delay in providing Plaintiff with a prosthetic eye, his face has begun to sink in. He further alleged that the lack of a prosthetic would cause permanent deformation, chronic pain, and severe headaches.

Finally, Plaintiff also alleged that as of May 19, 2024, he was eligible to be moved to a transitional center, which is a program that allows offenders to be slowly reintroduced into society and to work to earn money for their release. Plaintiff alleged he was supposed to be referred to the transitional center on May 19, 2024, in anticipation of his parole eligibility on August 19, 2025. However, he was informed by an unknown counselor and Warden Beasley that his loss of eyesight may prevent him from going to the transitional center, which he alleges results in him being held in prison longer than necessary.

Plaintiff was incarcerated at VSP from June 29, 2018, to June 29, 2022. (Doc. 1 at 6). He was transferred to Smith State Prison ("SSP") on June 29, 2022 (Doc. 40 ¶ 50) where he was incarcerated when this case was filed on April 8, 2024 (Doc. 1). Plaintiff was transferred from SSP to Calhoun State Prison ("CSP") on December 26, 2024, where, per the Court's records, he remains as of the date of this Order. (*See* Doc. 39 (last change of address notice filed by Plaintiff)).

After review of Plaintiff's first Amended Complaint (Doc. 12), he was permitted to go forward with the following claims alleging that:

1. Dr. Moody and Warden Shawn Emmons ("Warden Emmons") were deliberately indifferent to Plaintiff's serious medical needs by failing to ensure that he received his medication;

2. Corrections Officer Diana Searcy ("CO Searcy") was deliberately indifferent to Plaintiff's serious medical needs by denying him medication on one occasion;

3. CO Searcy retaliated against Plaintiff for threatening to file grievances against her;

4. Sgt. Tawann Newsom ("Sgt. Newsom") was deliberately indifferent to Plaintiff's serious medical needs by withholding his medication;

5. Sgt. Newsom used excessive force against Plaintiff when he held Plaintiff on the yard without food, water, or medication, when he sprayed Plaintiff with a chemical bear spray, and when he refused to allow Plaintiff to decontaminate himself after being sprayed;

3

6.     Sgt. Newsom retaliated against Plaintiff for threatening to file grievances against CO Searcy;

7.     Officer Daniel Smith ("Officer Smith") was deliberately indifferent to Plaintiff's serious medical needs when he refused to allow Plaintiff to have his medication;

8.     Officer Smith unconstitutionally failed to intervene with regard to Sgt. Newsom's alleged use of excessive force against Plaintiff;

9.     Warden Beasley was deliberately indifferent to Plaintiff's serious medical needs when he refused to allow Plaintiff to get fitted for a prosthetic eye;

10.     Warden Beasley transferred Plaintiff in retaliation for refusing to drop a grievance; and

11.     Warden Beasley, in his official capacity, violated Plaintiff's rights under the Americans with Disabilities Act by denying Plaintiff placement in a transitional center.

(*See* Order (Doc. 62) entered August 26, 2025).

Plaintiff's SAC was filed January 23, 2025, and the Motion to Dismiss was filed on August 18, 2025.[3] Below the Court addresses each document in turn along with Judge Helmick's recommendations with respect thereto.

## II.   STANDARD OF REVIEW

A district court judge shall make a *de novo* determination of those portions of the recommendation to which an objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If no timely objection is filed, the court considers the recommendation for clear error. "Most circuits agree that in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (alteration adopted) (citation and internal quotation marks omitted).

To properly object to the Recommendation, Plaintiff is required to provide "written objections which shall specifically identify the portions of the proposed findings and

---

[3] This case was stayed between January 10, 2025, and July 3, 2025. The stay was due to Defendant Dr. Raymond Moody's employer/affiliate, Wellpath, LLC and certain of its affiliates, filing jointly administered chapter 11 bankruptcy cases in the Southern District of Texas and the entry of an order by the bankruptcy court temporarily extending the automatic stay under 11 U.S.C. § 362 to non-debtors that arguably included Dr. Moody. (*See* Docs. 38 & 53).

4

recommendation to which objection is made and the specific basis for objection." *Id.* at 783 (citation and internal quotation marks omitted). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Id.* at 784. "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Shuler v. Okeechobee CI Warden*, 815 F. App'x 457, 458 (11th Cir. 2020) (per curiam) (citation and internal quotations marks omitted). However, liberal construction of *pro se* filings does not require courts to ignore the Rules; "a party who proceeds *pro se* must comply with the same procedural rules that other litigants must follow." *Diaz v. AT&T Mobility*, No. 1:10-CV-3356- 2013 WL 12098747, at *3-4 (N.D. Ga. July 19, 2013), *recommendation accepted and adopted by* 2013 WL 12097948 (N.D. Ga. Aug. 9, 2013).

## III.   PRELIMINARY SCREENING OF THE SECOND AMENDED COMPLAINT

### A.  New Defendants and Allegations

In the SAC, Plaintiff asserts claims for violation of his First, Eighth and Fourteenth Amendment rights as well as violations of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. Plaintiff makes the same allegations and claims, including dismissed claim, that he made in his first amended complaint (Doc. 12). He also adds claims against the following newly named Defendants (1) the Georgia Department of Corrections ("GDC"), (2) the Commissioner of the GDC, currently Tyrone Oliver ("Comm'r Oliver"), (3) Dr. Sharon Lewis ("Dr. Lewis"), Medical Director of the GDC, (4) Randy Sauls ("Sauls"), Assistant Commissioner for Health Services of GDC, and (5) Unit Manager Martin ("Martin"), the ADA coordinator at SSP. He names Comm'r Oliver, Dr. Lewis, Sauls, and Martin as Defendants in both their individual and official capacities. (Doc. 40 ¶¶ 11–14). The claims against these new Defendants are summarized as follows:

Plaintiff alleges that Dr. Lewis and Sauls are responsible for overall health services throughout the GDC. (*Id.* ¶ 13). Specifically, Plaintiff alleges that both Dr. Lewis and Sauls have repeatedly refused to provide the prosthetic for his left eye and have discontinued all appointments to do so. (*Id.* ¶¶ 58–60). Plaintiff asserts claims against Dr. Lewis and Sauls for deliberate indifference to a serious medical need by refusing to provide Plaintiff with a prosthetic eye. (*Id.* ¶ 95).

Plaintiff also alleges that the GDC, Dr. Lewis and Sauls violated the ADA/RA by failing to provide him with a prosthetic eye. (*Id.* ¶ 95).

He alleges claims against the GDC and Comm'r Oliver for deliberate indifference to a serious medical need by refusing to provide Plaintiff with a prosthetic eye. (*Id.* ¶ 95).

Plaintiff alleges that he will complete his sentence on August 19, 2026, and that he was referred to the transition center as of June 2024. According to Plaintiff, not only does the transition-center program help offenders by slowly introducing them back into society, it also offers offenders the opportunity to work and earn money to prepare for their eventual release. However, Plaintiff alleges that although he meets all the requirements for transfer to the transitional center, the GDC and Comm'r Oliver, along with Warden Beasley,[4] violated the ADA by failing and refusing to transfer Plaintiff to the transitional center citing his handicap; *i.e.*, the damage to his left eye, as the reason for refusing such transfer. As a result, Plaintiff alleges he will serve a longer sentence and has been deprived of the opportunity to participate in the program, including the opportunity to earn money. (*Id.* ¶¶ 61–64).

Plaintiff asserts that Warden Beasley, the GDC, Comm'r Oliver, and Martin violated his Eighth Amendment rights and violated the ADA and the RA, by disregarding all legal requirements for the protection of offenders with disabilities. (*Id.* ¶¶ 65, 98). Plaintiff alleges that while at SSP, he has never been in front of any classification committee. Nor has he seen any ADA classification coordinator, committee, or advisor. (*Id.* ¶ 65). He states his sight has diminished to the point where he falls over chairs, benches, and low objects. He states that Warden Beasley and Martin have repeatedly refused his requests for ADA accommodational housing; "*i.e.*, to be housed with others of Plaintiff's same handicap, be provided with security staff as is required for an institutional setting with ADA qualifications, to be provided with a visual [aid] assistant." (*Id.*) Even though he has verbally explained these problems to Warden Beasley and Martin, Plaintiff alleges he has been housed around non-handicapped offenders all under the age of twenty-five who are "extremely gang affiliated." (*Id.* ¶ 66).

---

[4] Warden Beasley is not a newly named Defendant, and as noted above, the Court has permitted certain claims against him to proceed. He is included in the discussion of claims against newly named Defendants merely to assist the Court in tracking claims that are permitted to go forward against the various Defendants.

6

Finally, Plaintiff alleges claims against the GDC, Comm'r Oliver, and Warden Beasley for deliberate indifference to his safety by failing to control the violence at the various prisons in which Plaintiff has been incarcerated. (*Id.* ¶¶ 69–89, 99).

**B. Judge Helmick's Recommendation**

Judge Helmick's recommendations regarding the SAC fall into three categories as summarized here:

1. Newly asserted claims to be permitted to proceed for further factual development:
   - Official capacity claims against Dr. Lewis and Sauls for deliberate indifference to a serious medical need by refusing to provide Plaintiff with a prosthetic eye;
   - Official capacity claims against Warden Beasley, Dr. Lewis, Sauls, Martin, and Comm'r Oliver for violations of the ADA/RA; and
   - Claims against GDC for violation of the ADA/RA.

2. Newly asserted claims to be dismissed:
   - Claims against GDC and official capacity claim against Comm'r Oliver for deliberate indifference to a serious medical need by refusing to provide Plaintiff with a prosthetic eye as precluded by Eleventh Amendment immunity;
   - Claims against Warden Beasley, the GDC, and Comm'r Oliver for deliberate indifference to his safety by failing to control violence in GDC prisons, including SSP.

3. Claims which were previously dismissed, reasserted in Plaintiff's SAC, and which are to be dismissed again:
   - Claim against Warden Beasley for deliberate indifference to a serious medical need in relation to an occasion when Plaintiff was held in the yard;
   - Claims against the Doe Nurses for deliberate indifference to Plaintiff's serious medical needs; and
   - Denial of due process claims against Unit Manager Walker ("Walker") and Warden Brian Adams ("Warden Adams").

**C. Review of Recommendation as to the Second Amended Complaint and Plaintiff's Objection**

Plaintiff raises only one objection to Judge Helmick's Recommendation; *i.e.*, the recommendation that the Court dismiss Plaintiff's claims relating to his allegations of prison violence. Thus the Court first makes a *de novo* determination as to this claim and then reviews

7

the remainder of the Recommendation as to the SAC to satisfy itself that there is no clear error on the face of the Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Macort*, 208 F. App'x at 784.

1. <u>Plaintiff's claim for deliberate indifference to his safety by failing to control violence in GDC prisons is improperly joined</u>.

Plaintiff seeks to add a new omnibus claim against Warden Beasley, the GDC, and Comm'r Oliver alleging they were deliberately indifferent to his safety because they failed to control the violence in various prisons in which Plaintiff has been incarcerated.[5] Plaintiff alleges that during his twenty-two-year period of incarceration he experienced acts of violence from other inmates including being stabbed and assaulted multiple times. (Doc. 40 ¶ 70). However, other than an alleged assault on Plaintiff that occurred on December 17, 2024, at SSP, Plaintiff has not identified the dates, locations, or injuries he incurred from other acts of alleged violence against him. Plaintiff alleges he has witnessed inmate-on-inmate violence and that he has perpetrated acts of violence against other inmates.[6] (*Id.* ¶¶ 71, 80). According to Plaintiff, acts of violence go largely unreported because no security staff is ever present. (*Id.* ¶ 72). He alleges that from 2023 through December 29, 2024 (the date Plaintiff signed the SAC), over twenty murders occurred at SSP. (*Id.* ¶ 73). He alleges that between 2018 and 2024, almost 200 homicides have been committed in GDC facilities. (*Id.* ¶ 71). Plaintiff alleges that the GDC and Comm'r Oliver have done "almost nothing to curb the thousands of assaults, from offenders on offenders having their hands cut off, stabbings, maimings, kidnappings and offenders held for ransom, rap[e]s, and even amputations from offenders creating barbaric style weapons from the run down delipidated facilities." (*Id.*) He alleges that, rather than curbing the violence, Warden Beasley has created an atmosphere of violence by allowing and encouraging offenders, and particularly the leaders of gangs, to discipline inmates. (*Id.* ¶ 74). Plaintiff offers no sufficiently detailed factual allegations in support of his claims.

In the SAC and in his objection to Judge Helmick's Recommendation, Plaintiff relies heavily on the October 1, 2024 Report of the U.S. Department of Justice, Civil Rights

---

[5] In addition to VSP, SSP, and CSP, Plaintiff states he has also been incarcerated at Hays State Prison, Ware State Prison, and Macon State Prison. (Doc. 40 ¶ 71). The dates of Plaintiff's incarceration at these institutions are not in the Record.

[6] One of which, ironically, resulted in Plaintiff's conviction for manslaughter. (Doc. 40 ¶ 80).

Division, Investigation of Georgia Prisons (Doc. 72-1) ("DOJ Report"), arguing that it provides proof of the GDC's, Warden Beasley's, and Comm'r Oliver's deliberate indifference to his safety by their failure to control violence in the prisons in which Plaintiff has been incarcerated.

For purposes of screening this claim, Judge Helmick assumed, without specifically finding, that (1) Plaintiff stated a claim against Warden Beasley, GDC, and Comm'r Oliver for deliberate indifference to his safety because they failed to control the violence in various prisons in which he was incarcerated, and (2) that joinder of this claim is otherwise proper under Federal Rules of Civil Procedure 18 and 20. (Doc. 69 at 11–12). For the reasons discussed in Judge Helmick's recommendation and for the reasons discussed below, the Court finds that Plaintiff's claim against Warden Beasley, the GDC, and Comm'r Oliver's for deliberate indifference to his safety by failing to control violence in GDC prisons is dismissed for improper joinder. Further, even if such claim was properly joined, the Court finds it should use its discretion to disallow joinder.

### a. Improper Joinder

Although Judge Helmick assumed without finding that joinder of this claim was proper under Rules 18 and 20, a closer look at the joinder requirements reflects that such is not the case. Rather, joinder is improper under Rules 18 and 20. Rule 20(a) imposes two requirements for joinder of defendants. First, all claims against parties joined as defendants must regard or arise out of the same transaction or occurrence, or series of transactions or occurrences. Second, there must be some question of law or fact common to all defendants that will arise in the action.[7] Fed. R. Civ. P. 20(a)(2). "Once a plaintiff has established that each defendant is properly joined, only then may he join as many claims as he has against each party per Federal Rule of Civil Procedure 18(a)." *Amerson v. Oliver*, No. 5:24-CV-149, 2025 WL 2206822, at *3

---

[7] Rule 20 provides that:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

(M.D. Ga. Aug. 4, 2025), *adopted in relevant part*, No. 5:24-CV-149, slip op. 3–7 (M.D. Ga. Dec. 4, 2025).

Courts have developed a variety of tests to give meaning to the first requirement of Rule 20 that all claims regard or arise from the same transaction or occurrence. Precedent construing Rule 13(a) setting forth the standard for compulsory counterclaims may be looked to for guidance. *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 & n.2 (M.D. Fla. 2010). In the Eleventh Circuit, courts apply the logical relationship test under which a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim. *Smith*, 728 F. Supp. 2d at 1319 (citing *Republic Health Corp. v. Lifemark Hosp. Corp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (per curiam)).

Here, the claims against all of the Defendants in the first amended complaint involved actions taken by the Defendants in exacerbating the injury to Plaintiff's left eye, resulting in its eventual loss and the further exacerbation of that injury by failing to provide Plaintiff with the needed prosthetic eye. Plaintiff now attempts to add the GDC and Comm'r Oliver as Defendants alleging they were deliberately indifferent to his safety because they failed to control the violence in various prisons in which Plaintiff has been incarcerated. Plaintiff attempts to add a claim against Warden Beasley on the same basis.

None of Plaintiff's allegations involving this claim have any logical relationship to his claims for injury to his left eye. All of the incidents alleged to support his claim for failure to control the violence in various prisons involve many different and separate transactions which occurred over a wide-range of dates at multiple prisons and involving occurrences totally unrelated to any injury to Plaintiff's eye. Plaintiff's argument that the events are logically related because they all involve Defendants' deliberate indifference to Plaintiff's safety is unpersuasive. *See e.g., Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (per curiam) (finding improper joinder when the only connection between the defendants' actions was that "each defendant showed indifference to [plaintiff's] failing health."). Plaintiff's claims related to prison violence require the Court to analyze each individual Defendant's conduct and personal knowledge related to numerous alleged conditions and transactions. The claims in Plaintiff's first amended complaint are factually

10

distinct from the new claim he now desires to assert against new Defendants the GDC and Comm'r Oliver, and against Warden Beasley related to alleged deliberate indifference to safety by failing to control violence at various prisons within the GDC system.

> b. *Court's Discretion*

Judge Helmick found that even if joinder of this new claim was proper under Rules 18 and 20, the Court should exercise its discretion to disallow joinder of this claim. (*Id.* at 12). "A district court may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met." *Amerson*, 2025 WL 2206822, at *4 (quoting *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022)). "When faced with a multi-party, multi-claim lawsuit—particularly one filed by a *pro se* litigant who has been identified as a three-striker, such as Plaintiff—the Court must question the propriety of joinder." *Id.* at *3. "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

In arriving at her recommendation, Judge Helmick notes that Plaintiff has been identified as an abusive litigant under the "three-strikes" provisions of the PLRA, and his ability to file cases is thus limited. As noted above, Plaintiff's original and first amended complaint (Docs. 1, 12) involve a specific incident and injury to Plaintiff; *i.e.*, the accidental splashing of bleach into Plaintiff's left eye and subsequent alleged actions by specific Defendants that exacerbated that injury. Judge Helmick notes that Plaintiff's action arose out of events that started at VSP involving allegations of Defendants' failure to provide medication, use of excessive force, retaliation, and violations of the ADA and RA. The damage to Plaintiff's left eye serves as the nexus linking all of the claims and allegations in the original and first amended complaint, as well as the majority of the claims and allegations in the SAC. The SAC also includes new factual allegations and new claims against additional individuals and the GDC after Plaintiff's transfer to SSP. As noted above, Judge Helmick recommends that certain of these new claims *related to the damage to Plaintiff's left eye* be permitted to proceed for further development. However, Plaintiff now seeks to transform his case "into a freewheeling action alleging systemic prison violence not just at SSP [and VSP] but the Georgia prison system as a whole." (Doc. 69 at 12–13). Plaintiff argues that the nexus linking the prison

11

violence claim to his current claims is Defendants' deliberate indifference and the imminent danger to Plaintiff's health and safety. (Doc. 73 at 2). The Court disagrees.

Notwithstanding the finding that Plaintiff is, otherwise, ineligible to proceed *in forma pauperis* under the three-strikes provision, the alleged imminent danger of serious physical injury related to the damage to his left eye is the sole reason Plaintiff was permitted to proceed with this case. Plaintiff's new claim alleging pervasive violence within the GDC prison system is not related in any way to the claims for which he was allowed to proceed *in forma pauperis* in this case. Nor is it likely that he would have been permitted to proceed with such an action had it been the basis for his initial filing.

Finally, as Judge Helmick notes, SSP is located in the Southern District of Georgia. Claims that Plaintiff wants to bring based on perceived threats against him because of alleged pervasive violence at SSP are more appropriately brought in that district in a separate action. "The principle that the Federal Rules of Civil Procedure do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts applies to Fed. R. Civ. P. 18(b) just as it applies to Fed. R. Civ. P. 18(a)—the rule cannot be used to expand the jurisdiction or venue of the district court." Jurisdiction and venue, 27 Fed. Proc., L. Ed. § 62:181.

Based on the foregoing, the Court finds that Plaintiff's claim against the GDC, Warden Beasley, and Comm'r Oliver for deliberate indifference to his safety by failing to control violence in the GDC prisons where Plaintiff has been incarcerated should be dismissed without prejudice for improper joinder. Further, the Court agrees with Judge Helmick's findings and recommendation that even if joinder were proper, the Court exercises its discretion and disallows such claim.

Accordingly, the claim against Warden Beasley, the GDC, and Comm'r Oliver alleging they were deliberately indifferent to his safety because they failed to control the violence in various prisons in which Plaintiff has been incarcerated is **DISMISSED WITHOUT PREJUDICE**.

> 2. <u>Review of remainder of the Recommendation with respect to the SAC</u>

Neither Plaintiff nor Defendants objected to any of Judge Helmick's remaining recommendations with respect the SAC. The Court has made a thorough review of such

recommendations and is satisfied that there is no clear error on the face of the record with respect thereto.

Accordingly, Plaintiff's newly asserted (1) claims against Dr. Lewis and Sauls for deliberate indifference to a serious medical need, (2) official capacity claims against Warden Beasley, Dr. Lewis, Sauls, Martin, and Comm'r Oliver for violations of the ADA/RA, and (3) claim against the GDC for violation of the ADA/RA shall be allowed to proceed for further factual development. The remainder of Plaintiff's newly asserted claims shall be **DISMISSED WITHOUT PREJUDICE**.

3. <u>Plaintiff has not shown good cause to be permitted to amend his complaint a third time</u>.

Plaintiff was transferred to CSP on December 26, 2024. As part of his Objection, Plaintiff attempts to once again amend his complaint. (*See* Docs. 73-2, 73-3). This time adding a claim against the GDC, Comm'r Oliver, CSP Warden Kindrie Jackson ("Warden Jackson"), and G. Spence, Deputy Warden of Security at CSP ("Deputy Warden Spence") alleging they are deliberately indifferent to his safety by failing to control the violence at CSP. In addition, he alleges that an unnamed GDC medical provider was deliberately indifferent to his medical needs by refusing to provide him with a prosthetic eye.

Plaintiff alleges that the first ten days of January 2025, at CSP, "it was bloody altercation after altercation; several stabbings—requiring air flight emergency response, many hospitalizations. In the month of January 2025, there was a homicide every day in and throughout the GDC. A few were at Calhoun State Prison." (Doc. 73-3 at 1). Plaintiff's allegations continue along this vein throughout his proposed amendment. In addition to other conclusory and insufficient factual allegations in support of claims, Plaintiff alleges that at CSP all cell doors do not lock, offenders can lock and unlock doors at will, there are times when only two officers are in charge of 1500 offenders, and Warden Jackson and Deputy Warden Spence delegate supervisory authority to gang leaders and other offenders.

For the reasons discussed at length, *supra* Part III.C.1, the Court finds that Plaintiff has failed to show that joinder of these claims is proper, and even if proper, the Court exercises its discretion to disallow joinder as contemplated by Plaintiff's proposed amendment. Plaintiff

13

has failed to show good cause to amend the SAC. Thus, Plaintiff's motion for leave to amend his complaint (Doc. 73-2), as included in his Objection (Doc. 73), is **DENIED**.

## IV.    THE MOTION TO DISMISS

As to the Motion to Dismiss (Doc. 58) filed by Dr. Moody, NP Seleska, and the Doe Nurses, Judge Helmick recommends that the Motion to Dismiss be denied in part and granted in part. Specifically, Judge Helmick recommends that the Motion to Dismiss be granted solely as to Plaintiff's claim for declaratory and injunctive relief, but that it be denied in all other respects. Neither Plaintiff nor any of the moving Defendants objected to Judge Helmick's Recommendation, and the Court, therefore, reviews that part of the Recommendation only to satisfy itself that there is no clear error on the face of the record.

As Judge Helmick notes, claims against NP Seleka were previously dismissed by Plaintiff and not reasserted in the SAC.[8] The claims against the Doe Nurses and reasserted in the SAC have been dismissed herein. The Court agrees with Judge Helmick that the SAC provides no basis upon which Plaintiff should be permitted to reassert claims against the Doe Nurses and the SAC states no claims against NP Seleska.

Dr. Moody moved to dismiss the SAC on several bases—statute of limitations, three strikes rule, failure to state a claim for deliberate indifference to a serious medical need, failure to comply with Georgia state law regarding claims for professional malpractice, qualified immunity, punitive damages, ADA/RA claims asserted against Dr. Moody in his individual capacity, and a claim for declaratory and injunctive relief. Judge Helmick thoroughly analyzed each of these bases for dismissal and the Court agrees with her analysis as follows:

Dismissal on the basis of Georgia's two-year limitation period for personal injury actions is unwarranted at this time. Under the prison mailbox rule,[9] Plaintiff's initial complaint

---

[8] Plaintiff included NP Seleska as a defendant in this action in his original complaint and first amended complaint. The only claim Plaintiff asserted against her was a state law claim, and Plaintiff voluntarily dismissed his state law claims. *See* Am. Compl. 22-28 (Doc. 12); *see also* Pl. Voluntary Dismissal of his State Tort Claims (Doc. 13) and Pl.'s Motion in Ex Parte, in Clarification of his Am. Compl. (Doc. 14). Plaintiff identifies NP Seleska as a Defendant in the caption in the SAC, but has not stated any claims against her in the body of the SAC.

[9] *See supra* note 1.

was signed, and thus timely filed, within two years of the date Dr. Moody alleges Plaintiff knew or should have known of his injury.

Dismissal because Plaintiff has three strikes under 28 U.S.C. § 1915(g) is unwarranted. As Judge Helmick notes and as discussed above, the Court allowed Plaintiff's claims to proceed despite having three strikes because he sufficiently alleged imminent danger. Further, § 1915(g) concerns only whether the filing fee must be paid up front.[10]

Judge Helmick reviewed each element necessary for Plaintiff to state an Eighth Amendment claim for deliberate indifference to a serious medical need. The Court agrees with her analysis that accepting Plaintiff's allegations in the SAC as true, such allegations were sufficient to state a claim against Dr. Moody for deliberate indifference to a serious medical need. Further, Plaintiff's claim for punitive damages should not be dismissed at this stage as Plaintiff has stated a claim for relief.

Plaintiff does not assert a claim for professional malpractice. Thus Dr. Moody's argument that the SAC should be dismissed for failure to comply with O.C.G.A. § 9-11-9.1(a) requiring that an affidavit of an expert be filed with Plaintiff's complaint is baseless.

Dr. Moody is not entitled to qualified immunity because even though Plaintiff personally informed him on several occasions about his need for prescribed medication, Plaintiff was not provided with the amount of medication prescribed. As Judge Helmick notes, the law was clearly established at the time that intentionally interfering with prescribed treatment constitutes deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (stating "indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

The Court agrees that the SAC does not assert ADA/RA claims against Dr. Moody. Thus, his motion to dismiss any such claims asserted against him in his individual capacity is moot.

---

[10] Section 1915(g) provides that: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

15

Finally, the Court agrees with Judge Helmick that Plaintiff's claims for declaratory and injunctive relief against Dr. Moody should be dismissed because upon Plaintiff's transfer from VSP, Dr. Moody is no longer Plaintiff's treating physician.

Upon review of the Recommendation as it related to the Motion to Dismiss, the Court agrees with Judge Helmick. Accordingly, the Motion to Dismiss is granted solely as to Plaintiff's claim for declaratory and injunctive relief, but denied in all other respects.

## V.    CONCLUSION

Upon full review and consideration of the Record, including *de novo* review of those portions of the Recommendation to which an objection is made as discussed above, this Court concurs with the findings set forth in the Recommendation. The Court finds that the Recommendation (Doc. 69) should be, and it hereby is, **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein together with the findings made and conclusions reached herein. For the reasons stated above, Plaintiff's Objection (Doc. 73) is **OVERRULED**.

Accordingly, the following newly asserted claims in the SAC shall be allowed to proceed for further factual development: (1) claims against Dr. Lewis and Sauls for deliberate indifference to a serious medical need, (2) official capacity claims against Warden Beasley, Dr. Lewis, Sauls, Martin and Comm'r Oliver for violations of the of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794, and (3) claim against the GDC for violation of the ADA and RA.

The remainder of Plaintiff's newly asserted claims in the SAC are **DISMISSED WITHOUT PREJUDICE**. Further, Plaintiff's claims which had previously been dismissed but reasserted in the SAC are **DISMISSED WITHOUT PREJUDICE**.

Further, the Motion to Dismiss (Doc. 58) filed by Dr. Moody, NP Seleska, and the Doe Nurses, is **DENIED IN PART and GRANTED IN PART**. With respect to Dr. Moody, the Motion to Dismiss is **GRANTED** solely as to Plaintiff's claims for declaratory and injunctive relief and is **DENIED** in all other respects as to Dr. Moody. The Court notes that the claims against the Doe Nurses which were reasserted in the SAC have been dismissed, *see supra* Parts III.B.3, III.C.2, and claims against NP Seleska were previously voluntarily

16

dismissed and not reasserted in the SAC, *see supra* Part IV & note 8. Therefore the Motion to Dismiss as to NP Seleska and the Doe Nurses is **DENIED AS MOOT**.

Finally, the claims that Plaintiff is being permitted to proceed for further development in this case are:

1.      A claim against Dr. Moody and Warden Emmons for deliberate indifference to a serious medical need by failing to ensure that Plaintiff received his medication for an eye injury;

2.      A claim against CO Searcy for deliberate indifference to a serious medical need by denying Plaintiff medication on one occasion;

3.      A claim against CO Searcy for retaliation after Plaintiff threatened to file grievances against her;

4.      A claim against Sgt. Newsom for deliberate indifference to a serious medical need by withholding Plaintiff's medication;

5.      A claim against Sgt. Newsom for excessive force by holding Plaintiff on the prison yard without food, water, or medication, spraying him with a chemical spray, and then refusing to allow him to decontaminate himself after being sprayed;

6.      A retaliation claim against Sgt. Newsom after Plaintiff threatened to file grievances against CO Searcy;

7.      A claim against Officer Smith for deliberate indifference to a serious medical need by refusing to allow Plaintiff to have his medication;

8.      A claim against Officer Smith for failure to intervene with Sgt. Newsom's use of excessive force against Plaintiff;

9.      A claim against Warden Beasley, Dr. Lewis, and Sauls for deliberate indifference to a serious medical need by refusing to allow Plaintiff to be fitted for a prosthetic eye;

10.     A retaliation claim against Warden Beasley for transferring Plaintiff from VSP to SSP after Plaintiff refused to drop a grievance;

11.     A claim against the GDC and against Warden Beasley and Comm'r Oliver in their official capacities for violation of the ADA/RA by denying Plaintiff placement in a transitional center;

12. A claim against the GDC and against Warden Beasley, Comm'r Oliver, and Unit Manager Martin in their official capacities for violation of the ADA/RA for failure to place Plaintiff in housing or a facility appropriate for someone with his disability; and

13. A claim against the GDC and Warden Beasley, Dr. Lewis, and Sauls in their official capacities for violation of the ADA/RA for failing to provide him with a prosthetic eye.

**SO ORDERED**, this 12th day of March 2025.

**/s/W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

18